UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIERAN WRAGGE and DAVID BEARD, <br><br> Plaintiffs, <br><br> v. <br><br> THE BOEING COMPANY, <br><br> Defendant. | No. 20-cv-04457 <br> Judge Franklin U. Valderrama |

MEMORANDUM OPINION AND ORDER

Plaintiffs Kieran Wragge (Wragge) and David Beard (Beard) are commercial pilots (collectively, Plaintiffs). Plaintiffs bring this personal injury lawsuit against Defendant The Boeing Company (Boeing), alleging they became ill after being exposed to contaminated fumes while flying a Boeing aircraft in Australia. Plaintiffs filed suit against Boeing, the designer and manufacturer of the aircraft, in the Circuit Court of Cook County, Illinois. Before being formally served with the summons or complaint, Defendant removed the case to the Court, arguing that diversity jurisdiction was proper in federal court under 28 U.S.C. 1332(a). Currently before the Court is Plaintiffs' Motion to Remand the case to the Circuit Court of Cook County. R. 16, Mot. Remand.[1] For the reasons that follow, Plaintiffs' Motion to Remand is denied.

---

[1] Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

**Background**

Plaintiffs are citizens of Australia. R. 1-1, Compl. ¶¶ 1–2. Boeing is a Delaware corporation with its principal place of business in Chicago, Illinois. *Id.* ¶ 3. Boeing is engaged in the business of designing, manufacturing, assembling, testing, servicing, marketing, promoting, leasing, and selling commercial aircraft as well as providing information and warnings about such aircraft, including the aircraft at issue. *Id.* ¶ 5. Boeing airplanes, other than the 787 Dreamliner, use a "bleed air" system where outside air is pulled into the aircraft's engines before entering the cabin. *Id.* ¶ 7. The air can be contaminated by heated jet oil, hydraulic fluid, and other contaminants or toxic by-products of such chemicals. *Id.* Inhaling contaminated cabin air can cause short-term or transient symptoms as well as permanent and serious personal injury. *Id.* ¶ 10.

Plaintiffs, pilots for Virgin Australia, attribute two contaminated air events on July 28, 2018 as the source of numerous health complications. Compl. ¶¶ 19–47. The first alleged contaminated air event was flight VA1102 from Brisbane to Newcastle on a Boeing 737-800 NG. *Id.* ¶ 19. Beard was the Captain of the flight, and Wragge was the First Officer. *Id.* Flight VA1102 was the first flight of the aircraft that day. *Id.* After Plaintiffs started Engine 2, exhaust fumes entered the cockpit. *Id.* ¶ 20. The fumes were in the flight deck and perceptible for about two minutes. *Id.* ¶ 22. The second contaminated air event was the same-day return trip from Newcastle to Brisbane on flight VA1103 using the same aircraft. *Id.* ¶ 25. Again, after starting Engine 2, the Plaintiffs were subjected to additional exhaust fumes. *Id.* Wragge began

coughing and felt a burning sensation in his throat. *Id.* ¶ 29. Beard experienced a raised heart rate and lightheadedness. *Id.* ¶ 31. The fumes dissipated after approximately four to seven minutes. *Id.*

Exposure to the contaminated cabin air has caused Wragge to experience short-term and long-term health effects including but not limited to migraines, sensitivity to odors, fatigue, exhaustion, chest pain, decreased motor skills, problems sleeping, trouble concentrating, cognitive defects, and anxiety. Compl. ¶ 44. Many of these symptoms continued to effect Wragge two years after the events, which have "completely derailed" Wragge's life. *Id.* ¶¶ 44–45. Beard has also experienced short-term and long-term health effects due to the contaminated air events, including nausea, confusion, accelerated heart rate, jittery feeling, fatigue, exhaustion, and cognitive deficits. *Id.* ¶ 46. Most of Beard's symptoms were resolved a few months after the events. *Id.* Plaintiffs have suffered loss of wages and wage-earning capacity in the past and in the future. *Id.* ¶ 47.

On July 24, 2020, Plaintiffs filed a five-count complaint against Boeing, alleging, in the Circuit Court of Cook County, Illinois, state law causes of action including negligence and fraud. Compl. ¶¶ 97–122. Plaintiffs do not allege an exact or minimum damages amount in their complaint. On July 29, 2020, Boeing filed a notice to remove this action to federal court before being served with the complaint. R. 1, Notice of Removal ¶ 2; Mot. Remand at 1. Boeing premised removal based on diversity jurisdiction, pursuant to 28 U.S.C. 1332(a). Notice of Removal ¶¶ 5–13. Plaintiffs move to remand this proceeding to Illinois state court. Mot. Remand.

## Legal Standard

By statute, Congress grants federal courts jurisdiction over two types of cases: those that "arise under" federal law, 28 U.S.C. § 1331, and those where there is diversity of citizenship and an amount-in-controversy requirement is met, *id.* § 1332(a). *See Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). District courts have diversity jurisdiction over all actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of a State and citizens . . . of a foreign state . . . ." 28 U.S.C. § 1332(a). "Diversity jurisdiction's basic rationale . . . is opening the federal courts' doors to those who might otherwise suffer from local prejudice against out-of-state parties." *Hertz v. Friend*, 559 U.S. 77, 85 (2010).

Generally, a plaintiff's choice of forum is accorded deference. *Savino Del Bene, U.S.A., Inc. v. Hartford Fin. Servs. Grp., Inc.*, 2012 WL 3961224, at *2 (N.D. Ill. Sept. 7, 2012) (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 72 (7th Cir. 1992)). But where, as here, "the plaintiff is a foreign citizen and resident . . . his choice of the United States as a forum should be accorded less deference than if the choice is made by a United States plaintiff." *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008) (citing *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)).

A defendant may remove to federal court any action filed in state court that could have originally been filed in federal court. 28 U.S.C. § 1441(a). When removal is premised on diversity jurisdiction, though, the defendant, as the party seeking

removal, "must also clear the additional hurdle of . . . the forum defendant rule." *Morris v. Nuzzo,* 718 F.3d 660, 664–65 (7th Cir. 2013) (internal citations omitted). "The forum-defendant rule limits the removability of diversity cases when a defendant is a citizen of the forum." *Grandinetti v. Uber Techs., Inc.*, 476 F. Supp. 3d 747, 753 (N.D. Ill. 2020). The forum defendant rule provides:

> A civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b)(2).

"The forum defendant rule is designed to preserve the plaintiff's choice of forum, under circumstances where it is arguably less urgent to provide a federal forum to prevent prejudice against an out-of-state party." *Morris,* 718 F.3d at 665 (internal citations and quotations omitted). Put another way, "the forum defendant rule disallows federal removal premised on diversity in cases where the primary rationale for diversity jurisdiction—to protect defendants against presumed bias of local courts—is not a concern because at least one defendant is a citizen of the forum state." *Id.* (internal citation omitted). "When a court evaluates a motion to remand, 'a plaintiff's choice of forum is presumed valid, and the court must resolve any doubts about jurisdiction in favor of remand.'" *I.T.M. v. Midwest Can Co., LLC*, 2021 WL 170734, at *1 (N.D. Ill. Jan. 19, 2021) (quoting *D.C. v. Abbott Lab'ys Inc.*, 323 F. Supp. 3d 991, 993 (N.D. Ill. 2018)).

5

## Analysis

Plaintiffs advance two arguments in support of remand. First, they argue that allowing Boeing's application of the forum defendant rule encourages the practice of "snap removal," whereby a defendant removes a case before the plaintiff has an opportunity to serve the defendant. Mot. Remand at 1–2.[2] Plaintiffs contend that this practice defeats a plaintiff's choice of forum and amounts to forum shopping, rendering 28 U.S.C. § 1441(b)(2) void. *Id.* at 2–3. Second, Plaintiffs argue that Boeing fails to establish that the amount in controversy exceeds $75,000, and therefore cannot establish diversity jurisdiction. *Id.* at 4–5. The Court addresses each argument in turn.

### I. Forum Defendant Rule

As an initial matter, it is undisputed that there is complete diversity of citizenship in this case as Plaintiffs are citizens of Australia and Boeing is a citizen of Illinois. Plaintiffs argue that Boeing, as a citizen of Illinois, is barred from removal by the forum defendant rule. Mot. Remand at 2 (citing *Vivas v. Boeing Co.*, 486 F. Supp. 2d 726, 734 (N.D. Ill. 2007)). Not surprisingly, Boeing insists that the forum-defendant rule does not apply because it had not yet been served with the complaint. R. 20, Resp. at 5–8 (citing *Grandinetti*, 476 F. Supp. 3d 747, among other cases). Admittedly, both sides marshal persuasive case law in support of their respective positions.

---

[2] The Court notes that Plaintiffs have used "1" as the page number for each page in their motion. Accordingly, the Court refers to the CM/ECF page number for Plaintiffs' motion.

It should go without saying that the Seventh Circuit has yet to decide the issue raised by Plaintiffs' motion: whether in a case premised on diversity jurisdiction, the forum defendant rule permits *pre-service* removal by a defendant who is a citizen of the forum state. In the absence of binding precedent, a divergence has emerged in this District.[3] On one side, most courts that have addressed the issue have allowed removal even in the face of a forum defendant, applying the "plain language" approach.[4] *See W. Bend Mut. Ins. Co. v. MSPPR, LLC*, 2021 WL 463259, at *4 (N.D. Ill. Feb. 9, 2021); *I.T.M.*, 2021 WL 170734, at *3: *Serv. Corp. Int'l v. Stericycle, Inc.*, 2020 WL 6565253, at *4 (N.D. Ill. Nov. 9, 2020); *Abbott Lab'ys Inc.*, 323 F. Supp. 3d at 996–97; *Graff v. Leslie Hindman Auctioneers, Inc.*, 299 F. Supp. 3d 928, 937 (N.D. Ill. 2017); *Selective Ins. Co. of S.C. v. Target Corp.*, 2013 WL 12205696, at *1 (N.D. Ill. Dec. 13, 2013); *Maple Leaf Bakery v. Raychem Corp.*, 1999 WL 1101326, at *2 (N.D. Ill. Nov. 29, 1999).

On the other side of the ledger are courts who have found that allowing removal by an at-home defendant defeats the purpose of the statute, known as the "purpose approach." *See Norwegian Air Shuttle ASA v. The Boeing Co.*, 2021 WL 1192574, at

---

[3]The issue presented by Plaintiffs' motion has not only divided courts in the Northern District of Illinois, but it has also divided courts outside the Seventh Circuit. *Compare Tex. Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 487 (5th Cir. 2020); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 707 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 154 (3d Cir. 2018) (all finding literal interpretation of statue not inconsistent with Congressional intent) *with Goodwin v. Reynolds*, 757 F.3d 1216, 1221 (11th Cir. 2014) (pre-service removal by forum defendant at odds with legislative intent).

[4]In addition to courts within this District, a recent Southern District of Illinois court recently weighed in and followed the plain language approach and allowed application of the forum defendant rule. *Knightsbridge Mgmt., Inc. T/A Knightsbridge Rest. Grp. v. Zurich Am. Ins. Co.*, 2021 WL 508687, at *4 (S.D. Ill. Feb. 11, 2021).

*5 (N.D. Ill. Mar. 30, 2021); *Kern v. Krso*, 2020 WL 3960509, at *4 (N.D. Ill. July 13, 2020); *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 67 F. Supp. 3d 952, 962 (N.D. Ill. 2014); *Grimard v. Montreal, Maine & Atl. Ry., Inc.*, 2013 WL 4777849, at *2 (N.D. Ill. Sept. 5, 2013); *Vivas*, 486 F. Supp. 2d at 734–35.

The Court begins its analysis, where it must, with the text of the statute. As a general rule, a court presumes that the language of a statute manifests Congressional intent. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009). It is a fundamental rule of statutory construction that where the language of the statute is plain and unambiguous, courts must give effect to the clear meaning of the statute as written. *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017) As the Supreme Court has instructed, "when the meaning of a statute's terms is plain," a court's job ends. *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1749 (2020); *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020) ("If the statutory language's plain meaning is unambiguous, [the Court's] inquiry ends there."). Plaintiffs do not argue that the forum defendant rule is ambiguous. No matter, because there is no question that the text of Section 1442(b)(2) is unambiguous: only a "properly joined *and served*" forum defendant is prohibited from removing an action. 28 U.S.C. § 1441(b)(2) (emphasis added). Plaintiffs do not argue that Boeing had been served when it removed the case to federal court. Thus, under the plain text of Section 1442(b)(2), removal was proper.

Since the Court finds the statute unambiguous, it must apply Section 1442(b)(2) as written, unless to do so would "frustrate the overall purpose of the

8

statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent." *Jefferson v. U.S.*, 546 F.3d 477, 483 (7th Cir. 2008) (internal citation omitted). Plaintiffs argue that applying the plain meaning of the statute would eliminate the forum defendant rule, frustrates public policy, and endorses forum shopping. Mot. Remand at 3. Boeing counters that applying the plain language is not inconsistent with the Congressional purpose for the forum defendant rule—which specifically was to prevent fraudulent joinder—and note that Plaintiffs offer no evidence to support their contention. Resp. at 8. Plaintiffs did not file a reply in support of their Motion to Remand, noting in a later submission to the Court that the issues "have been fully addressed." R. 21. Based on the Court's review of the parties' filings, as well as its own review of the statute and case law, it agrees with Boeing.

None of the exceptions to a plain-text interpretation apply here. Plaintiffs do not make an absurdity argument, and therefore have waived it. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("[A] party waives an argument by failing to make it before the district court."). Even so, the Court holds that a literal interpretation of the statutory text does not lead to absurd results. "[A]bsurdity is not mere oddity. The absurdity bar is high, as it should be. The result must be preposterous, one that no reasonable person could intend." *Tex. Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 486 (5th Cir. 2020) (internal citations and quotations omitted).

The Court, like other courts in this District, finds that allowing snap removal does not frustrate the overall purpose of the statutory scheme or contravene Congress'

9

intent in creating the forum defendant rule. Even though the plain language approach results in a few instances that would result in removal by a forum defendant, the Court cannot say that these instances somehow render the forum defendant rule void, as Plaintiffs suggest. *See W. Bend Mut. Ins. Co.*, 2021 WL 463259, at *3 ("Snap removals narrow the scope of the forum defendant rule and defeat its applications in many cases, but they are confined to scenarios where the defendant has not been served. Accordingly, the forum defendant rule is not vitiated entirely.") Other courts in this District have announced well-reasoned principles regarding the overall purpose of the statutory scheme and Congressional intent that the Court finds persuasive, and which the Court considers together.

If the primary purpose of diversity jurisdiction is to "prevent local prejudice, . . . [a]llowing snap removal does not encourage local prejudice." *W. Bend Mut. Ins. Co.*, 2021 WL 463259, at *3 (also finding that if snap removal disturbs a plaintiff's choice of forum, "because the concept of diversity jurisdiction itself limits plaintiffs' ability to choose the forum when the parties are diverse, that objection is of marginal effect."); *see also Grandinetti*, 476 F. Supp. 3d at 755 (finding that snap removal's undermining of a plaintiff's choice of forum "is not the same as undermining the forum-defendant rule specifically or the statutory framework for federal jurisdiction generally").

The Court also cannot rewrite the forum defendant rule. In *Grandinetti*, the court noted that:

> enforcing the text as-is does not so intensely undermine the statute's purpose that a federal court should rewrite the plain text. Indeed, the plain meaning of

10

> the removal statute governs because federal courts must assume that the ordinary meaning . . . accurately expresses the legislative purpose. This is just as true for the "properly joined and served" language as it is for the rest of the statute's text.

476 F. Supp. 3d at 755 (internal citations and quotations omitted). Congress included the phrase "properly joined and served" to use a bright-line rule to address a plaintiff's attempt at fraudulent joinder. *W. Bend Mut. Ins. Co.*, 2021 WL 463259, at *3. Yet, if the purpose of the forum defendant rule is to prevent fraudulent joinder—"suing either a nondiverse defendant or a forum defendant just to make sure that the case stays in state court"—"nothing about allowing an unserved forum defendant to avoid the forum-defendant rule would frustrate that purpose." *Grandinetti*, 476 F. Supp. 3d at 755. Moreover, the fraudulent joinder rationale has no bearing here because Boeing is the only defendant.

Clearly, if Congress was of the mind that it needed to amend the forum defendant rule because courts interpreting the statute had thwarted Congressional intent by allowing an unserved forum defendant to remand a case from a state court, it knows how to do so. But that is for Congress, not this Court, to do. *See Serv. Corp. Int'l.*, 2020 WL 6565253, at *4 ("Should Congress determine that removal where an in-forum defendant has not been served constitutes an abuse of the judicial system, Congress will rewrite the statute.").

This is not to suggest that Plaintiffs do not have a point. Other courts have noted the frustrating realities of this application. *See Norwegian Air Shuttle ASA*, 2021 WL 1192574, at *5 ("[T]he snap-removal loophole essentially writes the forum-defendant rule out of existence for any defendants with the resources and

11

wherewithal to monitor exhaustively local court filings."); *see also In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 67 F. Supp. 3d at 961–62. Plaintiffs argue that if Boeing is allowed to escape the forum defendant rule through snap removals, it will lead "sophisticated defendants who manufacture dangerous products" to believe that they can "escape liability through procedural abuse of process" and will be unlikely to fix the problem. Mot. Remand at 3. Again, though, it is not as if allowing forum defendants to remove diversity cases deprives plaintiffs of a forum to hold defendants accountable for allegedly dangerous processes. While Plaintiffs' choice of forum may be slightly undermined, the Court must adhere to well-settled principles of statutory interpretation in the context of the forum defendant rule itself. Therefore, the Court is required to interpret the statute as it is written, having concluded that such an interpretation is not absurd, does not frustrate the overall purpose of the statutory scheme, and does not contravene Congress' intent.

## II. Amount in Controversy

Next, Plaintiffs argue that the Court should remand the case because Boeing cannot prove that Plaintiffs' damages meet the statutory threshold. Mot. Remand at 4–5. As the removing party, Boeing has the initial burden of establishing the jurisdictional minimum by a preponderance of the evidence. *See Carroll v. Stryker Corp.*, 658 F.3d 675, 680–81 (7th Cir. 2011). This burden "is a pleading requirement, not a demand for proof." *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008). However, Boeing "must do more than point to the theoretical availability of certain categories of damages." *McMillian v. Sheraton Chi. Hotel & Towers*, 567 F.3d 839,

12

844 (7th Cir. 2009) (internal citations and quotations omitted). Typically, the starting point in determining the amount in controversy is the complaint. *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997).

Plaintiffs point out that their complaint does not allege that their damages exceed $75,000, and contend that the only evidence of the amount of damages suffered by each Plaintiff is Boeing's speculation, which focuses on Wragge's injuries. Mot. Remand at 5. Boeing counters that, contrary to Plaintiffs' suggestion, its Notice of Removal plausibly asserts that the amount in controversy exceeds $75,000 not on its own speculation, but instead based on the injuries alleged in Plaintiffs' complaint. Resp. at 13. Allegations of serious permanent injuries and significant medical expenses, asserts Boeing, are sufficient to satisfy the amount in controversy requirement. Resp. at 12 (citing *McCoy by Webb v. Gen. Motors Corp.*, 226 F. Supp. 2d 939, 941 (N.D. Ill. 2002); *Majchrzak v. Gap, Inc.*, 2018 WL 2220292, at *3 (N.D. Ill. May 15, 2018)).

Here, Plaintiffs allege that Wragge "suffered short-term and long-term health effects including . . . lung damage/scarring . . . cognitive defects . . . mental anguish . . . many of which still plague him . . . two years after the event," and that Wragge was unable to return to work two years later. Compl. ¶¶ 44–45. Plaintiffs also allege that Beard suffered "short-term and long-term health effects," although most of his symptoms resolved within a few months. *Id.* ¶ 46. Both Plaintiffs claim that Boeing caused Plaintiffs "short term and long term health problems and injuries including pain, suffering, mental anguish, emotional distress, physical impairment, loss of

13

normal enjoyment of life, medical bills and expenses as well as loss of wage earning capacity, in the past as well as reasonably anticipated in the future." *Id.* ¶ 122. Such allegations, particularly those relating to Wragge, make it more than likely that the amount in controversy exceeds the $75,000 threshold for diversity jurisdiction.

Plaintiffs' allegations mirror those in *Majchrzak*, which the court found to be sufficient to support the amount in controversy for diversity jurisdiction. 2018 WL 2220292, at *3 (allegations that plaintiff "'suffered severe and permanent injuries; has incurred and will incur substantial medical, hospital and therapy bills; has experienced and will in the future experience untold suffering[;] and has been deprived of the ability and capacity to attend most social and personal activities,' make it more likely than not that the amount in controversy exceeds the required minimum for diversity jurisdiction"); *see also McCoy by Webb*, 226 F. Supp. 2d at 941 (noting that it was "obvious from a common-sense reading of the complaint that Plaintiffs were seeking in excess of $75,000 in damages" where "Plaintiffs alleged that they suffered 'lasting and permanent injuries' and incurred bills related to 'medical, surgical, hospital, and nursing care for their injuries' as well as '[lost] wages and profits which they otherwise would have earned and acquired'"). As Boeing points out, not only does Wragge claim serious medical issues, but also lost pay and future income from his position as a commercial pilot for Virgin Australia Airlines. Resp. at 13. Without knowing Plaintiffs' exact salaries, claims for lost wages and future income, together with permanent injuries and significant medical expenses, "should sound warning bells in defendants' ears that significant damages are sought." *See*

14

*McCoy by Webb*, 226 F. Supp. 2d at 941; *see also Congdon v. Cheapcaribbean.com, Inc.*, 2017 WL 5069960, at *5 (N.D. Ill. Nov. 3, 2017) ("Plaintiffs' complaint explicitly requests damages for current and future 'pain, suffering, disability, disfigurement, loss of income, loss of a normal life, and medical expenses' as well as 'lost wages.' Such damages could easily exceed $75,000.").

Plaintiffs argue that "Beard does not even allege that he suffered permanent injury" and Boeing "cannot establish that either of the Plaintiffs' injuries each exceeded $75,000." Mot. Remand at 5. True, Beard alleges less severe and more short-term injuries than Wragge, but as indicated above, the complaint still alleges that he suffered serious injuries, emotional distress, and lost wages, together which are likely sufficient to satisfy the amount in controversy by a preponderance of the evidence. *See, e.g.*, *Majchrzak*, 2018 WL 2220292, at *3. Still, the Court need not definitively decide, as Boeing again is correct that the allegations about Wragge's more severe injuries and lost wages alone are sufficient to show by a preponderance that the amount in controversy exceeds the jurisdictional minimum for diversity jurisdiction. Resp. at 13 (citing *Exxon Mobil v. Allapattah*, 545 U.S. 546, 558–60 (2005) (holding that it is sufficient for a district court to exercise diversity jurisdiction if at least one claim satisfies the amount in controversy requirement, even if others do not)).

"[O]nce Defendants satisfy their initial burden that the amount in controversy exceeds the threshold by a preponderance of the evidence, Plaintiffs can counter that [their] claims are below the jurisdictional amount as a legal certainty." *Majchrzak*, 2018 WL 2220292, at *4. Plaintiffs do not even attempt to do so here. Therefore, the

Court finds that Boeing has met its burden of establishing that the amount in controversy meets the jurisdictional minimum, and as such, this Court has diversity jurisdiction over Plaintiffs' claims.

## Conclusion

For the foregoing reasons, the Court denies Plaintiffs' Motion to Remand [16]. On or before April 14, 2021, the parties shall file a joint initial status report. A template for the Joint Initial Status Report, setting forth the information required, may be found at http://www.ilnd.uscourts.gov/Judges.aspx by clicking on Judge Valderrama's name and then again on the link entitled "Joint Initial Status Report."

Dated: March 31, 2021

United States District Judge
Franklin U. Valderrama