IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KIEREN WRAGGE and DAVID
BEARD,

            Plaintiffs,

        v.

THE BOEING COMPANY,

           Defendant.

No. 20-cv-04457
Judge Franklin U. Valderrama

**MEMORANDUM OPINION AND ORDER**

Kieren Wragge (Wragge) and David Beard (Beard) (collectively, Plaintiffs) filed this suit against The Boeing Company (Boeing), seeking compensation for personal injuries after they were exposed to toxic fumes while piloting a Boeing-designed and manufactured aircraft to and from Brisbane to Newcastle, Australia. R. 1-1, Compl.[1] Before the Court is Boeing's Motion to Dismiss on Grounds of *Forum Non Conveniens* (the Motion), in which Boeing requests the Court dismiss this case so that it can be refiled in Australia. R. 41, Mot. Dismiss at 1. For the reasons that follow, the Motion is granted.

## Background

On July 28, 2018, Plaintiffs, citizens and residents of Australia, were working together as pilots for Virgin Australia, piloting a Boeing 737 aircraft, on a round-trip flight VA1101 from Brisbane to Newcastle. Compl. ¶¶ 1, 2, 19–20. Beard was the

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

Captain of the Flight and Wragge the First Officer. *Id*. ¶ 19. Plaintiffs comprised the entire flight crew for the short flight. *Id*. This was the aircraft's first flight of the day. *Id*. After starting Engine 2, before take-off, Plaintiffs experienced exhaust fumes in the cockpit. *Id*. ¶ 20. The fumes were stronger than those typical of a "cold engine" start, *i.e.*, the ignition of an engine that had been dormant for several hours. *Id*. The smell was an oil, exhaust smell, which was intense and lasted several minutes. *Id*. ¶ 22. Plaintiffs opened the vents and then started Engine 1, at which time the fumes began to dissipate. *Id*. ¶ 23. Plaintiffs decided to continue with the flight, as they thought they could safely fly the plane. *Id*. ¶ 24.

Boeing's older airplanes, like the one piloted by Plaintiffs, use a "bleed air" system where outside air is pulled into the aircraft's engines and once it leaves the engines, this "bleed air" is passed through the air-conditioning pack, where it is cooled and combined with recirculated air before it enters the cabin. Compl. ¶ 7. The air, allege Plaintiffs, often becomes contaminated by heated jet engine oil, hydraulic fluid, and other contaminants or the toxic by-products of such chemicals. *Id*. Inhaling contaminated cabin air, submit Plaintiffs, can cause short-term or transient symptoms, as well as permanent and serious personal injury. *Id*. ¶ 10.

On the return flight later the same day, Plaintiffs, while piloting the same aircraft, again experienced exhaust fumes on the flight deck upon the start of Engine 2 (together with the events of the outbound flight, the "Fume Events"). Compl. ¶ 25. Once again, the Plaintiffs noticed a strong smell of oil and exhaust, in addition to the strong smell of food cooking. *Id*. ¶ 27. While the smell was familiar, it was more

intense than previously. *Id.* ¶ 30. At this time, Beard began to experience a raised heart rate and lightheadedness. *Id.* ¶ 31. Wragge began coughing and experienced a burning, tingling sensation in his throat, lungs, and abdomen, and told Beard that he felt nauseous. *Id.* ¶¶ 29, 32. Plaintiffs opened the vents to maximize fresh air in the flight deck. *Id.* ¶ 30. The fumes dissipated after approximately four-to-seven minutes. *Id.* ¶ 31. Plaintiffs decided they were feeling well enough to continue with the flight. *Id.* ¶ 34. Plaintiffs' symptoms continued to worsen during the return flight, and Wragge has no memory of the descent and landing into Brisbane airport. *Id.* ¶¶ 36–41.

Wragge alleges that, due to his exposure to contaminated air, he suffered short-term and long-term health effects, including but not limited to, nausea, confusion, pain, migraines, chest pain, dizziness, vertigo, trouble concentrating, depression, and anxiety. Compl. ¶ 44. Many of Wragge's symptoms continued to affect him as of the filing of the Complaint about two years after the flight. *Id.* Wragge has been unable to return to work or care for his wife and two young children. *Id.* ¶ 45. Beard has also experienced short-term and long-term health effects due to his exposure to contaminated air, including but not limited to, nausea, confusion, accelerated heart rate, fatigue, and exhaustion. Compl. ¶ 46. Most of Beard's symptoms resolved within several months after the Fume Events. *Id.*

Plaintiffs filed suit against Boeing in the Circuit Court of Cook County, as Boeing maintains its global headquarters in Chicago, Illinois. Compl. ¶ 3. Plaintiffs assert claims of design defect (Count I); defective warning (Count II); negligence

(Count III); fraud (Count IV); and negligent misrepresentation (Count V). Compl. On July 29, 2020, Boeing removed the case to the District Court for the Northern District of Illinois. R. 1, Notice of Removal. Plaintiffs moved to remand the case to state court, R. 16, which the Court denied on March 31, 2021, R. 29. Boeing has now filed the Motion, seeking to dismiss based on *forum non conveniens*. Mot. Dismiss.

### Legal Standard

"The doctrine of *forum non conveniens*, effectively a supervening venue provision, empowers a court to dismiss a suit when litigating in that court as opposed to an alternative forum unreasonably burdens the defendant." *Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Holdings, Inc.*, 29 F.4th 351, 357 (7th Cir. 2022) (citing *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429–30 (2007)). "The central focus of the *forum non conveniens* inquiry is convenience." *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981)).

A district court may dismiss a case on grounds of *forum non conveniens* when "(1) 'an alternative forum has jurisdiction to hear [the] case' and (2) trial in the chosen forum would prove, disproportionate to the plaintiff's convenience, oppressive and vexatious to the defendant; or 'the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Instituto Mexicano,* 29 F.4th at 357 (quoting *Sinochem*, 549 U.S. at 432). The second prong of the analysis requires the court to balance the public and private interest factors implicated by the current and alternative forums. *Id.* (citing *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 868 (7th Cir. 2015)). The defendant bears the

burden of establishing that dismissal for *forum non conveniens* is appropriate. *In re Ford Motor Co.*, 344 F.3d 648, 652 (7th Cir. 2003). A court should use the doctrine of *forum non conveniens* sparingly. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016) (internal citations omitted).

## Analysis

Boeing argues that this case should be dismissed on grounds of *forum non conveniens* and refiled in Australia because Australia is an adequate and available alternative forum, and, on balance, the public and private factors favor dismissal. Mot. Dismiss at 1, 4–5.

As the moving party, Boeing must show: (1) that Australia is available and adequate as an alternative forum; and (2) that trial in the current forum would be disproportionately oppressive and vexatious to Boeing compared to the convenience of the Plaintiffs, when balancing the relevant private interest factors, or that trial in the Court would be inappropriate because of considerations affecting the Court's own administrative and legal problems. *Sinochem*, 549 U.S. at 423 (quoting *Am. Dredging Co.*, 510 U.S. at 447–48); *Instituto Mexicano del Seguro Soc.*, 29 F.4th at 357.

Before addressing the substance of the two-part *forum non conveniens* test articulated above, the Court must address three preliminary matters—one raised by Boeing and two by Plaintiffs.

## I. Plaintiffs' Reliance on State Cases

As an initial matter, the Court must determine whether the *forum non conveniens* inquiry is governed by state or federal law. Boeing cites only federal law,

whereas Plaintiffs rely upon numerous state cases in opposition to the Motion. R. 56, Reply at 10. The Supreme Court has declined to decide whether state law decisions on *forum non conveniens* are binding on a federal court in a diversity action. *See* 14D Fed. Prac. & Proc. Juris. § 3828.5 & n.7 (4th ed., Apr. 2021) (collecting cases). Nor has the Seventh Circuit weighed in on the matter. *See, e.g.*, *Apotex Corp. v. Istituto Biologico Chemioterapico S.p.a.*, 2003 WL 21780965, at *4 n.16 (N.D. Ill. July 30, 2003).

The Court agrees with Boeing that federal, not state law, governs. *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938) directs federal courts to follow federal rules of procedure, and the doctrine of *forum non conveniens* "concerns the administration and self-management of the federal courts, and does not implicate state-created substantive rules of decision." 14D Fed. Prac. & Proc. Juris. § 3828.5. The majority of courts that have addressed the issue have determined that federal law applies. *Id.* n.10 (collecting cases concluding that federal law applies); *see also DMC Mach. Am. Corp. v. Heartland Mach.*, 2018 WL 4590393, at *1 (S.D. Ind. Sept. 25, 2018) ("[T]he 'vast majority' of federal circuits who have decided the question apply federal law"). Moreover, recent cases in the Seventh Circuit and within this District, while not explicitly addressing the question of whether to apply state or federal law, have applied federal precedent. *See, e.g.*, *Clerides v. Boeing Co.*, 534 F.3d 623 (7th Cir. 2008); *In re Air Crash Disaster Over Makassar Strait, Sulawesi*, 2011 WL 91037, at *9 (N.D. Ill. Jan. 11, 2011); *Claisse v. Boeing Co.*, 2010 WL 3861073 (N.D. Ill. Sept.

28, 2010); *In re Air Crash Near Athens, Greece on Aug. 14, 2005*, 479 F. Supp. 2d 792 (N.D. Ill. 2007).

Many state cases cited by Plaintiffs are inconsistent with federal precedent. However, not all state cases are inconsistent with federal authority, as Boeing cites to one recent factually similar case in which the Illinois court granted a motion to dismiss for *forum non conveniens*. Reply at 11 (citing R. 56-2, Exh. A, *Bush v. The Boeing Co.*, No. 21 L 3160, Slip Op. at 7 (Cir. Ct. Cook Cty., Jan. 4, 2022)). To the extent that Illinois state law on the *forum non conveniens* doctrine conflicts with federal precent, the Court follows the majority of federal courts in applying federal law.

## II.     Timeliness of the Motion

Plaintiffs argue that the Court should consider Boeing's delay in filing the Motion as one of the relevant factors in deciding it. R. 53, Resp. at 6. Plaintiffs contend that a defendant implicitly agrees to the forum when it does not move to transfer the case at the earliest opportunity. *Id.* (citing *Winforge, Inc., v. Coachmen Industries*, 2009 WL 5200581, *2 (S.D. Ind. Dec. 22, 2009); *New Planet Energy Dev. LLC v. Magee*, 177 N.E.3d 1109, 1116, 1120 (Ill. App. Ct. 2020); *American Patriot Ins. Agency, Inc., v. Mutual Risk Management, Ltd.*, 364 F. 3d 884, 888 (7th Cir. 2004); *Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir. 1995)). Plaintiffs point out that Boeing waited over a year after its deadline to respond to the Complaint to file the Motion. *Id.* at 7. Boeing disagrees that the Court should consider the timeliness of the Motion, noting that in federal court there is "no time limit on when a motion to dismiss for *forum non*

*conveniens* must be made." Reply at 11 (quoting *Tyler Rsch. Corp. v. Envacon, Inc.*, 2020 WL 3577762, at *4 (N.D. Ind. July 1, 2020), *aff'd,* 843 F. App'x 322 (Fed. Cir. 2021*)* (internal quotations omitted)). The Court finds that Boeing has the better of the argument.

First, Boeing is correct that there is no timeframe within which a motion to dismiss on grounds of *forum non conveniens* must be made. *Tyler Rsch. Corp.*, 2020 WL 3577762, at *4 (citing 14D Fed. Prac. & Proc. Juris. § 3828 (4th ed. 2020) (collecting cases)). Notably, the federal cases cited by Plaintiffs do not compel a different conclusion. *Winforge* did not involve a *forum non conveniens* motion, but rather a motion to compel arbitration. 2009 WL 5200581, at *1. Similarly, *American Patriot Ins. Agency* did not involve a motion for *forum non conveniens*, but instead a motion to dismiss based on improper venue under Federal Rule of Civil Procedure 12(b)(3). 364 F.3d 884, 887. Lastly, in *Frietsch*, the Seventh Circuit affirmed the dismissal of the case under Rule 12(b)(3) based on a forum selection clause and found plaintiff's timeliness arguments to be waived, as they had not been raised until after the case was dismissed. 56 F.3d 825, 830–31 (7th Cir. 1995).

Second, Boeing included as an affirmative defense its objection to suit in this forum on *forum non conveniens* grounds in its Answer filed on August 11, 2020 (R. 11 at 52) and stated in the parties' joint initial status report filed on April 14, 2021 that it was considering filing a motion to dismiss based on *forum non conveniens* (R. 30 at 4), thereby putting Plaintiffs and the Court on notice of the defense. Reply at 12.

8

This is not to suggest that a *forum non conveniens* motion can be presented at any point in the litigation. A court may deny a motion based on the doctrine of *forum non conveniens* "if substantial progress has already been made in the litigation." *Tyler Rsch. Corp.*, 2020 WL 3577762, at *4. Here, by agreement of the parties, discovery has been stayed pending resolution of the Motion and based on Boeing's representations about its efforts to preserve all relevant discovery material. R. 39; R. 56-3, Hearing Tr. at 3:13–16. Therefore, the case has not significantly progressed.

In sum, Plaintiffs have failed to show that Boeing's Motion is untimely, and the Court will not consider it as a factor in deciding the Motion.

## III.   Deference to Plaintiffs' Choice of Forum

The next preliminary argument raised by Plaintiffs is that their choice of forum is entitled to substantial deference. Resp. at 10. Ordinarily, there is a strong presumption in favor of the plaintiff's choice of forum. *Piper Aircraft*, 454 U.S. at 255. Accordingly, a defendant seeking dismissal based upon *forum non conveniens* "bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem*, 549 U.S. at 430. Plaintiffs argue that despite their non-U.S. residence, the "Court should afford their decision [to file in Boeing's home forum as opposed to their own home forum] the same 'substantial deference' as it would provide to a U.S. resident." Resp. at 10–11. Plaintiffs, relying on Second Circuit law, contend that the more a foreign plaintiff's choice of forum has been dictated by reasons the law recognizes as valid, the greater

9

the deference will be given to the plaintiff's forum choice. *Id.* at 10 (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71–72 (2d Cir. 2001)). The Court disagrees.

It is well-settled law that while courts ordinarily accord a plaintiff's choice of forum strong deference, such is not the case where, as here, the plaintiff is foreign. *Piper Aircraft*, 454 U.S. at 255–56. Dilution of the presumption in favor of the Plaintiffs' choice of forum "is not bias against foreign plaintiffs but, instead, 'a practical observation about convenience.'" *Instituto Mexicano,* 29 F. 4th at 357 (quoting *Deb*, 832 F.3d at 806). That is not to say that a foreign plaintiff's choice of forum is entitled to no deference, but rather, as the Seventh Circuit explained, "[w]hen application of the doctrine would send the plaintiffs to their home court, the presumption in favor of giving plaintiffs their choice of court is little more than a tie breaker." *Abad v. Bayer Corp.*, 563 F.3d 663, 667 (7th Cir. 2009).[2] Plaintiffs are citizens and residents of Australia. Compl. ¶¶ 1–2. Therefore, Plaintiffs' choice of forum in this Court is not entitled to a strong deference.

The Court having addressed the preliminary matters, turns to the arguments on the two-part *forum non conveniens* test: (1) whether Australia is an available and adequate alternative forum; and (2) whether the public and private interest factors weigh strongly in favor of litigation in Australia.

---

[2]The Court agrees with Boeing that Plaintiffs' mis-quote *Abad* in their Response, as the language Plaintiffs attribute to *Abad* in support of giving non-U.S. plaintiffs "the same substantial deference as that afforded a U.S. citizen and resident beneficiary" appears nowhere in the opinion. Resp. at 10; *Abad*, 563 F.3d 663. To the contrary, as stated above, *Abad* stands for the proposition that non-U.S. plaintiffs' choice of forum is given little weight, such that it functions as "little more than a tie breaker." 563 F.3d at 667.

## IV.    Availability and Adequacy of Australia

The first step in the substantive *forum non conveniens* determination is to assess whether there is an alternative forum available for the dispute in question, considering both the availability and adequacy of the proposed alternative forum. *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 704 (7th Cir. 2005). The Court addresses each in turn.

### A. Availability of Australia

An alternative forum, here Australia, is available if all parties are "amenable to process and are within the forum's jurisdiction." *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 803 (7th Cir. 1997). Boeing points out that as Australian citizens, Plaintiffs are within the jurisdiction of Australian courts and that it has agreed, as a condition of dismissal, to "authorize an Australian lawyer to accept service on its behalf, thereby consenting to jurisdiction." Mot. Dismiss at 6 (citing R. 41-8, McKenna Decl. ¶¶ 42, 74; R. 41-1, Motto Decl. ¶ 15); *see Instituto Mexicano*, 29 F.4th at 358 (availability of forum was satisfied where defendant consented to service of process and personal jurisdiction in alternative forum). Plaintiffs concede Australia is an available forum. Resp. at 7. Thus, an alternative forum is available, and the first requirement is satisfied.

### B. Adequacy of Australia

The forum in question is adequate if "the parties will not be deprived of all remedies or treated unfairly." *Kamel*, 108 F.3d at 803 (internal citation omitted). An alternative forum, on the other hand, is inadequate only where "the remedy

11

provided . . . is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft*, 454 U.S. at 254. The Seventh Circuit has explained that "[e]ven where the relief is not as comprehensive or as favorable as a plaintiff might obtain in an American court, the alternate forum is still adequate." *Instituto Mexicano*, 29 F.4th at 357 (internal quotation marks and citations omitted).

Boeing argues that Australia is an "adequate" forum, noting that Australian law recognizes the types of claims Plaintiffs have asserted in this case: negligence, product liability, and fraud. Mot. Dismiss at 6 (citing McKenna Decl. ¶¶ 58–65, 69). Australian courts, submits Boeing, also provide procedures for taking evidence from parties and third-party witnesses, including pretrial access to documents concerning the aircraft and alleged events; compulsory disclosure of parties' relevant non-privileged documents; and subpoena power to compel disclosure of non-party documents for use at trial. *Id.* at 6–7 (citing McKenna Decl., ¶¶ 79–80). Should Plaintiffs prevail, posits Boeing, Plaintiffs can recover compensatory damages for pecuniary and non-pecuniary losses. *Id.* at 6 (citing McKenna Decl. ¶¶ 65–66).

Plaintiffs, on the other hand, contend that Australia is a "less adequate" forum than the Northern District of Illinois because: (1) Illinois courts have significant experience with toxic fumes cases[3]; (2) United States courts have expanded pre-trial discovery that includes depositions or witnesses and experts, whereas Australian courts limit nearly all discovery to document requests; (3) Australia has fee-shifting

---

[3]Plaintiffs point to "at least nine" toxic fumes cases currently pending or recently settled against Boeing in Illinois state and Federal courts, but of the nine listed, only one case against a different defendant was pending in the Northern District of Illinois, while the rest were litigated in Illinois state court. Resp. at 8 n.4.

rules that make re-filing the suit difficult for Plaintiffs financially; and (4) punitive damages are rarely available in Australia. Resp. at 7–8.

Boeing argues in reply that the adequacy element for a motion to dismiss on *forum non conveniens* grounds is not a comparison of the two forums, but a determination of the adequacy of the foreign forum, requiring only "some potential avenue for redress" in the foreign forum. Reply at 2 (quoting *Kamel*, 108 F.3d at 803). The Court agrees.

A forum is only inadequate when it "does not permit litigation of the subject matter of the dispute." *Piper Aircraft*, 454 U.S. at 255 n.22. "A forum is not inadequate merely because it is less favorable to the plaintiff." *Instituto Mexicano*, 29 F.4th at 358–59. At bottom, Plaintiffs' opposition to Australia is not that it would be deprived of a remedy, but that differences in law between Australia and the Northern District of Illinois, render it "less adequate." Resp. at 7–10. This, however, does not make Australia an inadequate forum. *See Instituto Mexicano*, 29 F.4th at 358–59. Here, Plaintiffs would have an avenue for redress in Australia, despite potential differences between U.S. and Australian courts, making Australia an adequate alternative forum.

The Court having found that Australia is an adequate, alternative forum, now turns to the private and public interest factors.

## V. Private Interest Factors

In considering whether Plaintiffs' chosen forum would be disproportionately oppressive and vexatious to Boeing compared to the convenience of Plaintiffs, the

Court must consider four private interest factors: "(1) relative ease of access to sources of proof; (2) availability of compulsory process and costs for attendance of witnesses; (3) possibility of viewing the premises, if appropriate; and (4) other practical issues, including the ease of enforcement of any ultimate judgment." *Deb*, 832 F.3d at 807. The Court address each in turn.

### A. Access to Sources of Proof

Boeing argues that the location of the evidence strongly favors Australia, as three categories of evidence are all in Australia. Mot. Dismiss at 7–9. First, all evidence related to the alleged Fume Events—including, but not limited to, the history of the plane, its maintenance records, the flight records, airline policies, any reports of investigations, and the airplane itself and any equipment removed from it—is located in Australia. *Id.* at 7 & n.3. Boeing contends that, without this evidence, it cannot demonstrate what happened in the Fume Events, much less defend against the claim that the Fume Events were due to design or manufacture defects of the airplane, and accordingly, that this evidence is located in Australia weighs heavily in favor of dismissal. *Id.* at 7 (citing *Clerides*, 534 F.3d at 629 (foreign location of evidence relating to flight crew, airline, and regulatory oversight supported dismissal)). Second, all witnesses and documents related to Plaintiffs' injuries, including all medical providers and medical records, as well as Plaintiffs' family and friends who may testify as to the extent of their injuries and the impact of the injuries on Plaintiffs' quality of life, are in Australia. Mot. Dismiss at 8 (citing R. 41-4, Wragge Interrog. No. 4; R. 41-6, Beard Interrog. No. 4; R. 41-5, Wragge Supp. Interrog. No. 3;

R. 41-6, Beard Interrog. No. 3). Boeing insists that because evidence about the extent of Plaintiffs' alleged injuries is located in Australia, this factor weighs heavily in favor of dismissal. *Id.* (citing, among other cases, *In re Factor VIII or IX Concentrate Blood Prod. Litig.*, 531 F. Supp. 2d 957, 973–75 (N.D. Ill. 2008), *aff'd sub nom. Abad v. Bayer Corp.*, 563 F.3d 663 (7th Cir. 2009) (finding that the relative ease of access factor weighed strongly in favor of dismissal where evidence relating to plaintiffs' medical histories was located in Argentina); *Herd v. Airbus SAS*, 2017 WL 6504162, at *3 (C.D. Cal. Dec. 11, 2017) (noting that, "[i]n the *forum non conveniens* context, federal courts have recognized that treating physicians are critical in product liability cases" and considering as a factor the locations of the plaintiff's family and friends who could testify as to the extent of the plaintiff's injuries) (internal quotation marks and citation omitted)). Third, Boeing points out that the witnesses who can testify to Plaintiffs' work history, employment records, and compensation, as well as the supporting documents, are in Australia, and this information is needed at trial to calculate and substantiate Plaintiffs' economic losses. *Id.* at 8–9 (citing, among other cases, *Herd*, 2017 WL 6504162, at *3 (considering in support of dismissal the fact that "key witnesses relevant to [the plaintiff's] injuries and damages include . . . supervisors and colleagues . . . who can testify about her work responsibilities, employment record, and compensation"); *In re Bridgestone/Firestone*, 420 F.3d at 705 (private interest factors weighed in favor of dismissal because plaintiff's "medical, employment, vehicle, and tax records [were] in Mexico")).

15

Plaintiffs respond that the number of potential witnesses for the Plaintiffs in the United States is greater than the number of witnesses for Boeing in Australia, and the anticipated testimony of witnesses who are located in Australia is limited to damages and Boeing's defenses. Resp. at 11–12. Contrary to Plaintiffs' assertion, such evidence does not relate only to Boeing's defenses and to damages, as Boeing points to evidence related to the alleged Fume Events, such as the airplane itself and evidence related to its maintenance, which is located in Australia. Even if that were not the case, the Court agrees with Boeing that, under federal authority, the Court can and should consider where evidence supporting the defendant's defenses is located. *See In re Air Crash Near Athens, Greece on Aug. 14, 2005*, 479 F. Supp. 2d 792, 799 (N.D. Ill. 2007) (considering location of evidence relevant to defenses because the "defendant is entitled to pursue its defense").

Plaintiffs further assert that when considering the residence of witnesses, the Court must consider "the materiality and importance of the[ir] anticipated testimony." *Id.* at 12 (citing *Herd*, 2017 WL 6504162, at *3). Relatedly, and relying only on out-of-Circuit authority, Plaintiffs take the position that the most important site of relevant documents and information is where the product was designed, not where the ultimate injury occurred. *Id.* at 13 (citing *Iragorri*, 274 F.3d at 74; *In re Air Crash Disaster Near Palembang, Indonesia*, 2000 WL 33593202, at *2 (W.D. Wash. Jan. 14, 2000)). On the other hand, Boeing contends that the fact that none of Boeing's own witnesses and documents are not in Australia, does not mean Illinois is more convenient, as none of that evidence is in Illinois and Boeing has agreed to produce

its documents and witnesses in Australia. *Id.* at 9; Reply at 6. Supreme Court and Seventh Circuit precedent have found that the ease of access factor tips in favor of dismissal in products liability suits where "a large proportion of the relevant evidence is located" in the foreign forum even where "records concerning the design, manufacture, and testing of the propeller and plane are located in the United States." *Piper Aircraft*, 454 U.S. at 257–58; *see also Clerides*, 534 F.3d at 629 & n.4. Within the Seventh Circuit, courts have held that this is especially true where evidence in the defendant's possession is not located in Illinois, and where the defendant has agreed to produce any evidence and witnesses in its possession in the foreign forum. *See Claisse*, 2010 WL 3861073, at *4–5; *see also see Clerides*, 534 F.3d at 629; *In re Air Crash Disaster over Makassar Strait*, 2011 WL 91037, at *6.

Finally, relying only on Illinois state law, Plaintiffs argue that Boeing cannot contend that Illinois, its home forum, is inconvenient, *id.* at 11 (citing, among other cases, *Kwasniewski v. Schaid*, 607 N.E.2d 214, 217 (1992)), and regardless, in this age of remote access, all of the documents in the case will be exchanged electronically so the accessibility evidence factor "has become a less significant factor . . . in the modern age of [technology], since [documents] can now be easily copied and sent" and because witnesses will be available via online video platforms. *Id.* at 14 (quoting *Vivas v. Boeing Co.*, 911 N.E.2d 1057, 1070 (Ill. App. Ct. 2009)). Plaintiffs conclude that this factor therefore does not "strongly favor" Boeing. *Id.* at 12. Plaintiffs, however, fail to cite to any federal authority holding that the Court should afford this factor less weight in the modern age. Conversely, the cases relied upon by Boeing in

17

support of this factor were decided recently, suggesting that the availability of technology was (or could have been) a consideration for the courts. *See, e.g.*, *Clerides*, 534 F.3d at 629; *see also Claisse*, 2010 WL 3861073, at *4–5; *In re Air Crash Disaster over Makassar Strait*, 2011 WL 91037, at *6. Even if the Court were to give this factor less weight as it pertains to the electronic exchange of documents, as Boeing points out in reply, Plaintiffs' suggestion of the availability of online testimony is only applicable if witnesses agree to or could be compelled to testify, which the Court addresses in its consideration of the next factor. Reply at 6.

The Court agrees with Boeing that the first private interest factor, the relative ease of access to sources of proof, favors Australia over the Northern District of Illinois. It can hardly be disputed that the majority of the relevant witnesses and evidence reside in Australia, including Plaintiffs' medical providers and evidence related to the alleged Fume Events. *See Herd*, 2017 WL 6504162, at *3–4 (first factor favored transfer where medial witnesses resided in Australia and evidence related to the alleged aircraft design defect was located outside of the United States). Additionally, as in *Herd*, all of Plaintiffs' records relevant to their injuries and damages are in Australia, including their medical records, employment records, and tax and other financial records. *Id*. at *3. The Court finds that this factor strongly favors dismissal.

## B. Availability of Compulsory Process/Costs of Obtaining Attendance of Witnesses

The second private interest factor courts consider is the availability of compulsory process and costs for attendance of witnesses. *Deb*, 832 F.3d at 807.

Boeing argues that this factor weighs in favor of transfer, as nearly all the relevant documents and witnesses are outside of this Court's compulsory reach. Mot. Dismiss at 10. First, as to witnesses, Boeing asserts that the Court cannot compel the appearance of unwilling Australian nationals: Australian witnesses may be compelled to give oral testimony only in Australia, not in the United States, and only for trial, not for discovery purposes. *Id.* (citing *Relational, LLC v. Hodges*, 627 F.3d 668, 673 (7th Cir. 2010); McKenna Decl. ¶¶ 85, 89, 90). Second, as to documents, Boeing points out that, although Australia is a signatory to the Hague Convention, under which a party "seeking to employ a foreign court's compulsory powers in order to obtain evidence [must] file a 'Letter of Request,'" Australia, under Article 23 of the treaty, has opted out of executing letters of request for pretrial discovery materials. *Id.* (citing *Durkin v. Intevac, Inc.*, 782 A.2d 103, 114–115 (Conn. 2001) (citing Hague Convention, art. 23, 23 U.S.T. 2568); McKenna Decl. ¶ 90); *see also Herd*, 2017 WL 6504162, at *4.

Plaintiffs respond that, to carry the burden of proving that this factor favors dismissal, Boeing must demonstrate there are actual witnesses who are unwilling to testify in the chosen forum; because Boeing has provided no witnesses who would refuse or are reluctant to testify in the United States, Boeing's claims that there are witnesses who would not be able to testify is speculative. Resp. at 15 (citing *Clerides*,

534 F.3d at 629). However, *Clerides* does not stand for the proposition that a defendant seeking dismissal on *forum non conveniens* grounds must affirmatively establish that witnesses are unwilling to testify; it simply noted that the foreign defendant refused to voluntarily produce in the United States any witnesses. 534 F.3d at 629. That was a fact of the case, not a requirement articulated by the Seventh Circuit. As Boeing points out, the Supreme Court has specifically rejected the argument that "defendants seeking *forum non conveniens* dismissal must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum." Reply at 5 (quoting *Piper Aircraft*, 454 U.S. at 258).

The Court finds that the availability of the compulsory process for obtaining unwilling witnesses also strongly favors Australia. Boeing has argued and presented unrebutted evidence that the parties will have no mechanism by which to compel testimony of unwilling Australian witnesses outside of Australia. Mot. Dismiss at 10 (citing McKenna Decl. ¶¶ 85, 89, 90); *see also Herd*, 2017 WL 6504162, at *4. Boeing avers that it will make their witnesses available to Plaintiffs if the case is refiled in Australia, so Plaintiffs face no challenges in compelling foreign witnesses to appear in Australian court. *See Clerides*, 534 F.3d at 629 (ease of access to proof factor favored dismissal even when foreign witness testimony could be compelled via letters rogatory under the Hague Convention, where defendant agreed to produce its witnesses in foreign forum).

20

As for the costs of obtaining the attendance of witnesses, even if some Australian witnesses were willing to appear voluntarily in this forum, posits Boeing, it would not be easy, expeditious, or inexpensive for Boeing to arrange their appearance, given that there are potentially dozens of witnesses in Australia necessary for trial. Mot. Dismiss at 11. On the other hand, Plaintiffs assert that, absent any compelling evidence by Boeing, the Court should assume there will be similar costs and difficulties transporting witnesses to any forum. Resp. at 16. The Court finds this factor neutral, since such costs will be incurred no matter where this litigation proceeds.[4] *See Siswanto v. Airbus Americas, Inc.*, 2016 WL 7178460, at \*12 (N.D. Ill. Dec. 9, 2016); *In re Air Crash Near Athens, Greece on Aug. 14, 2005*, 479 F. Supp. 2d at 801.

## C. Enforceability of the Judgment

Boeing does not address this factor. Plaintiffs maintain that the enforceability of the judgment appears to be equal, and the Court agrees. Resp. at 16; *see Herd*, 2017 WL 6504162, at \*4 ("This factor does not cut in either direction. The Court has been given no reason to doubt that either this Court or an Australian Court would be unable to enforce its judgment.").

---

[4]The Court does not consider Boeing's assertion that Australians are unable to leave the country under the Australian Government's COVID-19 guidelines. *See* Mot. Dismiss at 11. As Plaintiffs point out in response, even at the time of the filing of the Motion, individuals were able to travel between the United States and Australia for necessary business purposes, which would include legal matters such as this case. Resp. at 15 n.8. Australia's COVID travel restrictions have further loosened as of the date of this Opinion. *See* https://www.homeaffairs.gov.au/covid19/entering-and-leaving-australia (last updated Aug. 3, 2022).

### D. Other Practical Issues

Boeing also does not address this factor. Plaintiffs argue that dismissing the case in favor of Australia or Washington state would require both parties to start over after two years of work and sharing confidential information. Resp. at 16 (citing *Abad*, 563 F.3d at 666). Plaintiffs point out that they have: paid filing fees in Cook County; fought to oppose Boeing's snap removal; retained a document management company to gather electronically stored information (ESI); and gathered and provided Boeing with documents supporting plaintiffs' damage calculations. *Id.* If the case has to be refiled in Australia, posit Plaintiffs, the Complaint will have to be redrafted in compliance with Australian law and the resources spent on ESI will be wasted. *Id.* at 16–17.

While the Court is not oblivious to the fact that dismissal would, at some level require the parties to incur additional expenses, Plaintiffs have not cited any authority for the proposition that a court may consider this fact as a basis to deny a motion for *forum non conveniens*. Although the Seventh Circuit in *Abad* stated that "[a] case should not be lightly shifted from one court to another, forcing plaintiffs to start over," it said as much in *dicta*, and found that, in applying the multifactor *forum non conveniens* test and dismissing the case, the district court did not abuse its discretion.

The Court finds that nearly all of the private interest factors weigh in favor of dismissal, and now turns to the public interest factors courts consider in resolving a *forum non conveniens* motion.

## VI.    Public Interest Factors

"Courts analyze the following public interest factors when evaluating a *forum non conveniens* motion: (1) the administrative difficulties stemming from court congestion; (2) the local interest in having localized disputes decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty." *Instituto Mexicano,* 29 F.4th at 360 (internal quotation marks and citation omitted). The Court addresses in factor in turn.

### A. Administrative Difficulties – Court Congestion

Boeing maintains that Northern District of Illinois dockets are more congested and less efficient than dockets in Australia and therefore this factor supports dismissal. Mot. Dismiss at 14–15 (citing *DeKoven v. Knight Frank, LLP*, 2005 WL 6407794, at *4 (N.D. Ill. Oct. 12, 2005) (finding administrative difficulties factor weighed in favor of dismissal because "London County Courts resolve disputes on average far more quickly than the Northern District of Illinois")). Boeing points out that in 2019, "the last year in which litigants had unimpeded access to federal courts, more than 9,500 civil and criminal cases were filed in the Northern District." Mot. Dismiss at 15 (citing http://www.ca7.uscourts.gov/annual-report/2019_report.pdf). The median time for disposition of civil suits was 7.6 months. *Id.* (citing https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2021.pdf). As of June 2021, however, notes Boeing, "the median time to disposition has

grown 14.2 months." *Id*. By comparison, asserts Boeing, in the Supreme Court of Queensland, there were 2,825 cases filed and 2,801 resolved in the court calendar year ending June 30, 2020, and nearly all cases were resolved in less than a year." *Id*. (citing McKenna Decl. ¶ 94).

Plaintiffs note that while Boeing presents some data on the congestion of courts in the Northern District of Illinois, that data is not comparable to the data about court congestion in Queensland because only three months of the observed period in Queensland took place during the COVID-19 pandemic, whereas the entire period in the Northern District of Illinois was during the pandemic. Resp. at 19–20 Relying again on Illinois state caselaw, Plaintiffs assert that, since Boeing does not present a specific, less congested forum for the case to be retried in, it fails to carry the burden that this public factor strongly favors dismissal. *Id*. at 20 (citing *Vivas*, 911 N.E.2d at 1071).

The Court finds that, under federal authority, this factor weighs in favor of dismissal. In *Clerides*, the Seventh Circuit upheld the district court's determination that, despite having no information regarding the congestion of the foreign forum's courts, given the median time to trial in the Northern District of Illinois was twenty-four months, this fact was "at best" neutral. 534 F.3d at 630. Here, like the defendant in *DeKoven*, Boeing has presented evidence that the foreign forum's courts resolve disputes more quickly than courts in the Northern District of Illinois, and as such, the Court finds that this factor weighs in favor of Queensland courts. 2005 WL 6407794, at *4.

24

## B. Local Interest and Burden of Jury Service

The Court addresses the second and fifth public interest factors together. Boeing argues that Australia has a strong interest in the health and safety of Australian pilots flying aircraft owned and operated by an Australian airline within Australia. Mot. Dismiss at 12 (citing *Siswanto*, 2016 WL 7178460, at *12; *Clerides*, 534 F.3d at 630). Illinois' interest, on the other hand, submits Boeing, is "legally insignificant," as the airplane was neither designed nor manufactured in Illinois, and never operated here. *Id.* at 13.

According to Boeing, the fact that its corporate headquarters is located in Illinois does not change this analysis. Mot. Dismiss at 13. Plaintiffs, relying only on Illinois state authority, counter that Cook County has a significant interest in litigation arising from Boeing maintaining its global headquarters in Chicago, as Illinois has an interest in the safety of aircraft that fly over Illinois skies and the operations of companies that conduct business in Illinois. Resp. at 18.

The Court finds that this factor weighs in favor of dismissal. Plaintiffs are citizens and residents of Australia, who were allegedly injured while piloting a Virgin Australia plane manufactured by Boeing, from Brisbane to Newcastle. Australia's interest in protecting the health of its citizens outweighs Illinois' interest in the case based on the location of Boeing's corporate headquarters. *See Piper Aircraft*, 454 U.S. at 260–61 (finding Scotland had "a very strong interest in th[e] litigation" where airplane crash occurred in its airspace and all decedents were Scottish, and rejecting argument that "American citizens have an interest in ensuring that American

25

manufacturers are deterred from producing defective products" because "the incremental deterrence that would be gained if this trial were held in an American court is likely to be insignificant"); *Clerides,* 534 F.3d. at 629 ("although the United States has an interest in regulating domestic companies, its interest is matched by the interests of Greece and Cyprus in regulating the use of allegedly defective products within their borders," so the factor weighed in favor of foreign forum where most decedents of air crash were nationals of Greece and Cyprus); *Siswanto*, 2016 WL 7178460, at *13 ("[T]his Court gives less weight to the maxim that a defendant's home forum has an interest in providing a forum for redress for injuries caused by one of its citizens, when, as here, we have foreign plaintiff[s] who [were] injured in a foreign land filing suit against . . . American defendant[s] with extensive foreign dealings.") (internal quotation marks and citations omitted). Accordingly, for the reasons stated above, the local interest factor favors dismissal.

Similarly, the Court finds no compelling reason to press into jury service the citizens of the Northern District of Illinois for a case where the events giving rise to the lawsuit occurred in Australia, involving an aircraft not manufactured in Illinois, and where the majority of the witnesses are in Australia. *See Clerides*, 534 F.3d at 630; *see also Siswanto*, 2016 WL 7178460, at *13; *Stroitelstvo Bulgaria*, 598 F. Supp. 2d at 888–89. The local interest and trial burden factors strongly favor dismissal.

### C. Application of Foreign Law

Boeing notes that Australian law will govern Plaintiffs' case, and Plaintiffs do not disagree. Mot. Dismiss at 13 (citing *Abad*, 563 F.3d at 670); *see* Resp. While the

Court can apply foreign law, reasons Boeing, the burden of doing so cannot be justified when there is another jurisdiction with a significantly greater interest in the litigation and greater expertise in the applicable law. *Id.* at 13–14 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)). Mot. Dismiss at 13. Plaintiffs counter that nearly every toxic fumes case was or is being litigated or settled in state and federal courts in Chicago, Illinois, so these courts are most familiar with the law governing such toxic fumes cases. Resp. at 19. As the Court noted above, all but one of the cases cited by plaintiffs is or was litigated in Illinois state courts, with only one having been pending in the Northern District of Illinois. *See supra* Section IV.B.

Because the parties do not appear to disagree that Australian law applies, there is no need to engage in a "complex exercise[e] in comparative law." *Piper Aircraft*, 454 U.S. at 251. A court's "'desire to avoid the burden of mastering a new legal subject' is not by itself 'an adequate reason to send litigants packing.'" *Stroitelstvo Bulgaria*, 598 F. Supp. 2d at 889 (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 732 (7th Cir. 2003)). That said, "the Court's legitimate concern with having to 'delve into the tenets of an unfamiliar legal system' may tip the scales in favor of dismissal." *Id.* (quoting *Kamel*, 108 F.3d at 805). Thus, because Australian law applies to this dispute, the Court find this factor to weigh slightly in favor of dismissal.

All in all, the Court finds that the balance of public interest factors weighs strongly in favor of dismissal.

**Conclusion**

For the foregoing reasons, the Court find that dismissal for *forum non conveniens* is appropriate and therefore grants Boeing's Motion to Dismiss [41]. Dismissal is conditioned upon the Boeing's agreement to conditions A through D as stated in the Declaration of Joseph L. Motto and copied below:

If Plaintiffs file this action in a forum in Australia within 120 days of dismissal, Boeing will:

A. Authorize Jones Day to accept service of process on Boeing's behalf, thereby consenting to an Australian court's jurisdiction in action(s) re-filed by Plaintiffs;

B. Toll any statutes of limitations that might be applicable to such re-filed actions for 120 days after dismissal by the Court;

C. Make available in actions re-filed by Plaintiffs in the courts of Australia any evidence and witnesses in its possession, custody, or control in the

United States that the Australian courts deem relevant and order produced; and

D. Pay or cause to be paid on Boeing's behalf any damages awarded by the Australian courts in such refiled actions, subject to any right of appeal.

Motto. Decl. ¶ 15. Civil case terminated.

Dated: September 9, 2022

United States District Judge
Franklin U. Valderrama